# Staunton

## W. M. McFall v. Bank of Haysi.

September 20, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Browning and Chinn, JJ.

The opinion states the case.

*Rose & Rush* and *S. H. & Geo. C. Sutherland,* for the plaintiff in error.

*G. Mark French,* for the defendant in error.

HUDGINS, J., delivered the opinion of the court.

The Bank of Haysi instituted this action against the makers and endorsers of a note, and recovered judgment against them in the sum of $1,500. From this judgment W. M. McFall, one of the joint makers, obtained this writ of error.

McFall admits that his signature on the note is genuine, but contends that the note was delivered upon condition that the bank sign a collateral contract which it failed to do, and that this failure released him from any and all liability on the note. This contention necessitates a review of the facts.

Bertha Sutherland and George C. Sutherland, her husband, in consideration of $1,500 borrowed from the bank, executed and delivered to it their joint note, with certain endorsers. As additional security for the payment of this debt Bertha Sutherland conveyed her interest in certain lands to R. W. Wright, trustee, with the usual power of sale. On July 24, 1931, the date of maturity of a note given in renewal of the original obligation, the debtors failed to make payment. After this default the bank authorized the trustee to sell the property described in the deed of trust. To prevent this sale W. M. McFall, a brother of Bertha Sutherland, signed the note upon which this action is based, as joint maker with Mr. and Mrs. Sutherland, payable to J. C. Sutherland and W. H. McCoy, the two endorsers. W. M. McFall offered this note, complete upon its face, with his check for $75 with which to pay interest from July 24th to September 24, 1931, to the bank as renewal of the old obligation, conditioned upon the bank signing the following contract:

"This memorandum of agreement made and entered into this 15th day of August, 1931, by and between the Bank of Haysi, party of the first part, and W. M. McFall party of the second part.

"Witnesseth: That whereas, Bertha Sutherland has executed to the said Bank of Haysi, a deed of trust on certain of her property to secure it the payment of a certain note, in the sum of $1,500, which said deed of trust is recorded in Dickenson county deed book Number 61 at page 125, to which reference is hereby made, and the said W. M. McFall, has this day become maker of the said note along with the said Bertha Sutherland and Geo. C. Sutherland; now in the event that the said W. M. McFall shall pay off the said note or any part thereof, or the interest thereon, then in that event, and when said payment is so made the said Bank of Haysi agrees and binds itself to assign and transfer to the said W. M. McFall, all and any right and securities it now has by reason of the deed of trust; this is intended to cover any renewal of the said note or part thereof.

"W. M. McFall

"O. K.
"W. H. McCoy,
"J. C. Sutherland,
"Geo. C. Sutherland,
"Mrs. Bertha Sutherland."

The bank used the check and requested McFall to obtain the approval of J. C. Sutherland and W. H. McCoy to the contract. This was done. Thus the matter remained until after maturity of the note. Then the bank informed the parties whose names appeared on the note that it would again renew if they were unable to pay it. McFall refused to renew unless the bank would execute still another contract prepared by him. This second collateral contract gave McFall the option either to pay the $1,500 or any part thereof, in which event the bank would be obligated to assign all interest it had in the deed of trust to him, or to decline to pay the $1,500 or interest thereon or part thereof, in which event McFall was to be released from all obligation on the note and the bank should retain the deed of trust and refund to McFall any and all sums paid by

him on the principal or interest. It is not surprising that the bank refused to become a party to such a one-sided agreement.

On November 6, 1931, the bank wrote McFall that it "* * * would not be willing to do anything more than assign our deed of trust to you if you pay the note off. As one of the makers of the note you would be responsible to the bank until the full amount was paid anyway."

It does not appear that McFall replied to this letter and some two months later this action was instituted with results above noted. McFall testified that he delivered the note and $75 check upon condition that the bank sign the collateral agreement dated August 15, 1931, and that the bank did not sign this paper. The cashier testified, that McFall presented two copies of the agreement; that each party signed one copy and gave it to the other; that later McFall returned to the bank and stated that he had misplaced the copy retained by him and signed by the bank, and asked the cashier to lend him the bank's copy. This request was granted, and subsequently McFall refused to return the copy to the bank. He admitted borrowing the paper, but denied the bank had signed and delivered to him any copy of the agreement. On this statement he based his whole defense. The verdict of the jury settled this conflict against McFall and in favor of the bank.

After this action was begun and before trial, the bank requested the trustee to sell the property described in the deed of trust. While the action was pending on a motion to set aside the verdict, the property conveyed by the deed of trust was sold for $600. Thereafter McFall renewed his motion to set aside the verdict on the ground of after-discovered evidence, namely, sale of the property after verdict. McFall knew that the trustee had, at the bank's request, advertised the property for sale. Indeed the trustee, R. W. Wright, testified in behalf of McFall and no information concerning the sale was solicited from him. There is no merit in the contention.

The only debatable question presented in the record is

whether the bank had the right to maintain an action against McFall and at the same time retain the lien created by the deed of trust.

In this court McFall contends that under the contract of August 15th the bank was bound to assign the lien created by the deed of trust immediately upon accepting his check for $75. It is significant to note that McFall has never paid or offered to pay any part of the debt since he signed the note, nor did he at any time request the bank to make an assignment of the lien or any part thereof to him. It was not until after the verdict was returned that McFall made the contention, the effect of which is that he offered to become liable for the debt of his sister upon condition that the bank surrender to him all rights under the deed of trust. His conduct at the time and until after verdict is inconsistent with such contention.

The circumstances under which the note and contract of August 15th were executed and the conduct of the parties show that the parties contemplated that Bertha Sutherland and her husband, the parties primarily liable, would eventually pay the $1,500, with interest, but in the event they failed to pay the same, or any part of it, and the accommodation maker was required to pay that part of the debt or interest not paid by Mr. and Mrs. Sutherland, then the bank should assign the deed of trust to McFall. He knew that this was the construction placed upon the contract by the bank. He never objected to this construction. He was unsuccessful in his attempt to get the bank to execute a new contract which would have substantially changed the rights of the parties. He permitted, without protest, the bank to sell under the deed of trust. He does not attack the sale or contend that he has been damaged thereby. His only contention before the sale was that the bank had never signed the contract in question. It was only after he was defeated on this issue that he abandoned it, and sought another avenue of escape from liability on the note.

He admitted that he signed the note to aid his sister and prevent a sale of her property which was then about to be

consummated. After this was accomplished, he sought one device after another to escape a liability which he had voluntarily assumed. When pressed to fulfill his obligation he refused to pay or renew the note, except under conditions which would have relieved him entirely of all liability. Under these circumstances the bank had a right to sell under the deed of trust, credit the note with the proceeds of sale, and institute an action for the difference, or maintain an action on the note for the full amount of the debt and surrender the lien to McFall when he had discharged the obligation. In either case McFall will receive full benefit of the lien created by the deed of trust, which is what his contract with the bank secures to him.

For the reason stated the judgment is affirmed.

*Affirmed.*